UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DIXIE BREWING COMPANY, INC. | CIVIL ACTION |
| VERSUS | NO. 13-461 |
| U.S. DEPARTMENT OF VETERANS AFFAIRS, CLARK CONSTRUCTION GROUP, L.L.C., AND MCCARTHY BUILDING COMPANIES, INC. | SECTION: "F" |

ORDER AND REASONS

Before the Court is Dixie Brewing Company's motion for a preliminary and permanent injunction.  For the reasons that follow, the motion is DENIED for lack of subject-matter jurisdiction.

Background

This dispute arises out of the ongoing construction of the Louisiana State University-Veterans Affairs Medical Center located in the New Orleans Mid-City neighborhood, which will replace Charity Hospital and the downtown New Orleans VA Medical Center.

The construction of the LSU-VA Medical Center has been controversial,[1] in part because of LSU's expropriation of

---

[1] A cursory search of the Times-Picayune Web site proves this much.  See, e.g., Bill Barrow, Opponents of LSU-VA Hospital Project Call on Jindal, City Officials To Modify Planning Process, NOLA.COM (Mar. 25, 2009), http://www.nola.com/news/index.ssf/2009/03/groups_want_jindal_city_more_i.html; Kate Moran, LSU and VA To Build Joint Medical Campus in Downtown New Orleans; VA Expected To Open by 2013, NOLA.COM (Nov. 24, 2009), http://www.nola.com/news/index.ssf/2008/11/lsuva_shared_hospital_site_is.html; Richard A. Webster, Program To Move Homes from LSU-

approximately thirty-five acres of land in Mid-City for the new

medical complex.  The City of New Orleans, LSU, and the VA

entered into numerous agreements in which LSU agreed to invoke

"quick-take" authority under Louisiana Revised Statute § 19:141

to assist New Orleans in providing land to the VA for its

development of the medical center:  LSU would expropriate the

required land for both the LSU and VA sections of the complex,

and then LSU would transfer a portion of the land to the VA.  The

designated area for the VA hospital is bordered by Galvez Street,

Rocheblave Street, Canal Street, and Tulane Avenue.  The Dixie

Brewing Company building, which at one time brewed the local

Dixie beer, is located on a parcel at the corner of Rocheblave

Street and Tulane Avenue.[2]  The Dixie property was not originally

included in LSU's expropriation efforts; however, in February

2010, the Dixie property was added to the land slated for

expropriation, spurring a flurry of state-court activity ever

since.

On April 29, 2010, LSU filed a petition in state court for

access to the Dixie property for the purpose of inspecting and

---

VA Hospital Site, Rehab Them, Remains In Disarray, NOLA.com (Nov. 24, 2012), http://www.nola.com/politics/index.ssf/2012/11/ program_to_move_homes_from_lsu.html.

[2] Hurricane Katrina significantly damaged the Dixie Brewing Company building, rendering the property unusable.  Notably, Dixie Brewing has not used the building post-Katrina, and the company currently brews Dixie beer in Wisconsin.

evaluating the property to make a just compensation offer.  The petition was granted, and, after inspection, LSU tendered an offer of compensation to Dixie, which Dixie rejected.  On February 16, 2011, Dixie filed a petition for a declaratory judgment, temporary restraining order, and injunctive relief in state court to prevent LSU from expropriating the Dixie parcel. The temporary restraining order was granted and subsequently dissolved on February 25, 2011; LSU's exception was upheld and the suit was dismissed with prejudice.  Dixie did not seek appellate review.  On February 25, 2011, relying on its quick-take authority, LSU filed a petition for expropriation of the Dixie parcel in state court, which was granted.  LSU took possession of the Dixie property the same day, and the land was ultimately transferred to the VA.  On June 3, 2011, Dixie filed a motion to dismiss LSU's petition for expropriation in state court, challenging the constitutionality of LSU's quick-take authority.  The motion has yet to be ruled on and it appears no hearing date is currently set.

Approximately six months later, on January 27, 2012, Dixie filed a petition for a preliminary and permanent injunction in state court, requesting the court prevent LSU from entering into an agreement to transfer the Dixie property to any third parties, including the VA, without first offering it for resale back to Dixie.  LSU filed exceptions of no cause and no right of action,

and Dixie's petition was denied on February 7, 2012.  Dixie

provided LSU notice of its intent to apply for a supervisory

writ, but failed to do so.  On October 12, 2012, Dixie again

filed a petition for a preliminary and permanent injunction in

state court to prevent LSU from entering into an agreement to

transfer the Dixie property to any third parties, including the

VA, without first offering it for resale back to Dixie.  LSU

filed the exception of res judicata, and, again, Dixie's petition

was denied with prejudice on November 16, 2012.

On March 12, 2013, Dixie sued the VA, Clark Construction

Group, LLC, and McCarthy Building Companies, Inc. in this Court,[3]

invoking federal question and diversity of citizenship

jurisdiction, and seeking a temporary restraining order and a

preliminary and permanent injunction.  The Court denied Dixie's

request for a temporary retraining order, finding that Dixie

failed to fulfill the requirements under Rule 65 of the Federal

Rules of Civil Procedure.[4]  LSU filed a motion to intervene on

March 21, 2013, alleging that Dixie's complaint is "inextricably

---

[3] The VA has contracted with Clark Construction and McCarthy
Building Companies for the demolition of the Dixie property.
Neither company has been issued a "notice to proceed" by the VA
to start the construction/demolition work.

[4] The Court further ordered that to the extent Dixie invokes
the Court's diversity jurisdiction, it must amend its complaint
within ten days to properly allege the citizenship of all
parties.  Dixie filed an amended complaint on March 22, 2013, in
compliance with the Court's order.

interwoven" with LSU's expropriation and subsequent transfer of
the Dixie property.  Dixie opposed LSU's motion to intervene,
asserting that LSU, as prior owner of the property, no longer has
an interest in the land.  On April 16, 2013, Magistrate Judge
Sally Shushan considered the motion to intervene on the briefs
and granted the motion, allowing LSU to intervene.  The Court now
considers Dixie's request for a preliminary and permanent
injunction.

### Legal Standard

It is well settled that "preliminary injunction is an
extraordinary remedy that should not be granted unless the party
seeking it has clearly carried the burden of persuasion."
Bluefield Water Ass'n v. City of Starkville, Miss., 577 F.3d 250,
253 (5th Cir. 2009) (quoting Lake Charles Diesel, Inc. v. Gen.
Motors Corp., 328 F.3d 192, 196 (5th Cir. 2003)); see also
Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (noting that
preliminary injunctions are "extraordinary and drastic" forms of
judicial relief that should not be granted absent "a clear
showing"); PCI Transp., Inc. v. Fort Worth & W. R.R. Co., 418
F.3d 535, 545 (5th Cir. 2005). The Court can issue an injunction
only if the movant shows:

> (1)  a substantial likelihood of prevailing on the
>       merits;
>
> (2)  a substantial threat of irreparable injury if the
>       injunction is not granted;

> (3)   the threatened injury outweighs any harm that will
>        result to the non-movant if the injunction is
>        granted; and
>
> (4)   the injunction will not disserve the public
>        interest.

Ridgely v. Fed. Emergency Mgmt. Agency, 512 F.3d 727, 734 (5th

Cir. 2008).

"Speculative injury is not sufficient [to make a clear

showing of irreparable harm]; there must be more than an

unfounded fear on the part of the applicant." Holland Am. Ins.

Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985); see

Wis. Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674

(D.C. Cir. 1985) ("[Irreparable] injury must be both certain and

great; it must be actual and not theoretical."). Where the

injury is merely "financial" and "monetary compensation will make

[the plaintiff] whole if [the plaintiff] prevails on the merits,"

there is no irreparable injury. Bluefield, 577 F.3d at 253. But

when the nature of economic "rights makes 'establishment of the

dollar value of the loss . . . especially difficult or

speculative,'" a finding of irreparable harm is appropriate.

Allied Mktg. Grp., Inc. v. CDL Mktg., Inc., 878 F.2d 806, 810 n.1

(5th Cir. 1989) (quoting Miss. Power & Light Co. v. United Gas

Pipe Line Co., 760 F.2d 618, 630 n.12 (5th Cir. 1985)).

## I. Discussion

Dixie seeks an injunction barring the VA, Clark Construction

Group, and McCarthy Building Companies, from demolishing the

Dixie property until the ongoing state-court litigation is

decided.   Specifically, Dixie posits that construction should not

proceed when the constitutionality of LSU's expropriation remains

unresolved.   The Court need not address the merits of Dixie's

motion because the Court lacks subject-matter jurisdiction.[5]

*A.*

Federal courts are courts of limited jurisdiction,

possessing only the authority granted by the United States

Constitution and conferred by the United States Congress.   Howery

v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001).   The

Court "must presume that a suit lies outside this limited

jurisdiction, and the burden of establishing federal jurisdiction

rests on the party seeking the federal forum."   Id. (citing

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

---

[5]   The Court notes with some curiosity that Dixie wholly
fails to address the standard for a preliminary injunction,
which, as movant, it carries the burden to prove.   After
belaboring the facts of this case, Dixie, in one sentence,
states:   "VA's destruction of the property will cause irreparable
injury, loss, and damages to Dixie, and there is no economic
remedy for Dixie's damages in violation of its Constitutionally
mandated property rights."   The case literature clearly
establishes the four prerequisites for the issuance of an
injunction.   Even after the VA and LSU cite (and argue) the
appropriate legal standard in their opposition papers, Dixie
failed to submit reply papers, which the Court expressly allowed
for in its briefing schedule.   The Court reminds counsel that a
preliminary injunction is an extraordinary remedy, which the
Fifth Circuit has instructed "should not be granted unless the
party seeking it has clearly carried the burden of persuasion."
Bluefield, 577 F.3d at 253 (emphasis added).   This would require,
at a minimum, addressing the test for a preliminary injunction.

(1994)).  Dixie contends that this Court has subject-matter

jurisdiction in two ways:  federal question jurisdiction and

diversity jurisdiction.  See 28 U.S.C. §§ 1331, 1332 (2006).  The

Court addresses each in turn.

*B.*

Dixie submits that the Court has federal question

jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491 (2006),

which waives the federal government's sovereign immunity for

certain contract claims.  The Tucker Act states:

> Both the United States Court of Federal Claims and the
> district   courts   of   the   United   States   shall   have
> jurisdiction  to  render  judgment  on  an  action  by  an
> interested party objecting to a solicitation by a Federal
> agency for bids or proposals for a proposed contract or
> to a proposed award or the award of a contract or any
> alleged violation of statute or regulation in connection
> with a procurement or a proposed procurement. Both the
> United States Court of Federal Claims and the district
> courts of the United States shall have jurisdiction to
> entertain such an action without regard to whether suit
> is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).  Congress, however, clearly and

unequivocally terminated district court jurisdiction under this

Act as of January 1, 2001.  See Rothe Dev., Inc. v. U.S. Dep't of

Def., 666 F.3d 336, 338 (5th Cir. 2011) ("Congress subjected the

district courts' jurisdiction to a sunset provision, terminating

district court jurisdiction as of January 1, 2001. (citing

Administrate Dispute Resolution Act of 1996, Pub. L. No. 104-320,

110 Stat. 3870, 3875 (1996))).  Congress did not renew the

district courts' jurisdiction, and the Court of Federal Claims

now retains exclusive jurisdiction over "action[s] by an
interested party" objecting to the bid or award of a contract by
a federal agency.[6]   Id.; see also Pizani v. St. Bernard Parish,
No. 12-2541, 2013 WL 1403317, at *4 (April 5, 2013) ("[P]ursuant
to the Tucker Act, the Court of Federal Claims has exclusive
jurisdiction.").  As a result, the Court simply does not have
subject-matter jurisdiction based on the law invoked by Dixie.[7]

Dixie fails to identify any other statute that presents a
federal question or that waives the VA's sovereign immunity.  The
Court notes that "[t]he basic rule of federal sovereign immunity
is that the United States cannot be sued at all without the
consent of Congress."  Block v. North Dakota, 461 U.S. 273, 287
(1983).  The Fifth Circuit mandates that "a waiver of sovereign
immunity must be specific and explicit and cannot be implied by
construction of an ambiguous statute."  Petterway v. Veterans
Admin. Hosp., Hous., Tex., 495 F.2d 1223, 1225 n.3 (5th Cir.
1974).  By relying on the Tucker Act, which no longer confers
jurisdiction on this Court, Dixie cannot establish federal
question jurisdiction or waiver of sovereign immunity.

---

[6]  Because the Court lacks jurisdiction, it is unnecessary
to address whether Dixie qualifies as an "interested party" under
the statute.

[7]  Dixie apparently concedes this point—it failed to address
the subject-matter jurisdiction concerns raised by the VA.

*C.*

Dixie also contends that the Court has diversity jurisdiction under 28 U.S.C. § 1332.  Again, as movant, Dixie bears the burden of proving that "complete diversity" exists and that the amount in controversy exceeds $75.000.[8]  See 28 U.S.C. § 1332; Smallwood v. Ill. Cent. R.R. Co., Inc., 385 F.3d 568, 572 (5th Cir. 2004)(en banc).  Complete diversity requires that the citizenship of every plaintiff be diverse from the citizenship of every defendant.  "In cases involving multiple plaintiffs or defendants, the presence of but one nondiverse party divests the district court of original jurisdiction over the entire action." In re Olympic Mills Corp., 447 F.3d 1, 6 (1st Cir. 2007) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806)).

Generally, jurisdiction is determined at the time the lawsuit is filed.  The U.S. Supreme Court has stated that "if jurisdiction exists at the time any action is commenced, such jurisdiction may not be divested by subsequent events." Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991).  There are exceptions, however:  the postfiling introduction of a nondiverse party may, in certain circumstances, defeat diversity jurisdiction.  See, e.g.,  Brown v. Pac. Life Ins. Co., 462 F.3d 384, 394 (5th Cir. 2006) (holding that a postfiling, nondiverse party under Rule 19(a) may destroy

---

[8] The amount in controversy is not at issue in this motion.

subject-matter jurisdiction if the party is deemed

indispensable);  Lawyers Title Ins. Corp. v. Prestige Title,

Inc., No. 09-170, 2009 WL 20322406, at *6-7 (S.D. Miss. July 9,

2009) (holding that a postfiling, nondiverse intervenor may

divest the court of subject-matter jurisdiction if considered

indispensable); see also In re Olympic Mills, 477 F.3d at 7

(holding that a postfiling, nondiverse intervenor may "spoil"

diversity jurisdiction).

     Here, Dixie is a citizen of Louisiana; McCarthy Building

Companies a citizen of Missouri; and Clark Construction Group a

citizen of Maryland.[9]  At the time this lawsuit was filed,

complete diversity existed between the parties (with the

exception of the VA, which, as the Court explained above, cannot

be sued absent a waiver of sovereign immunity).  LSU intervened

in this case, however, creating a jurisdictional dilemma.  As the

Fifth Circuit has explained, "[i]n an action where a state is a

party, there can be no federal jurisdiction on the basis of

diversity of citizenship because a state is not a citizen for

purposes of diversity jurisdiction." Louisiana v. Union Oil Co.

of Cal., 458 F.3d 364, 366 (5th Cir. 2006) (quoting Tex. Dep't of

---

[9]  According to Dixie's first amended complaint, Dixie is a
corporation incorporated in Louisiana and has its principal place
of business in New Orleans.  McCarthy is a corporation
incorporated in Missouri and has its principal place of business
in St. Louis.  Each member of Clark, LLC, is domiciled in
Maryland and, therefore, Clark is a citizen of Maryland.

Hous. & Cmty. Affairs v. Verex Assurance, Inc., 68 F.3d 922, 926
(5th Cir. 1995)).   Therefore, the question becomes:   does a
postfiling, nondiverse, intervenor defendant defeat diversity
jurisdiction?   Although Dixie completely fails to respond to the
jurisdictional disputes raised by all parties in this case (which
the Court can arguably consider to be a waiver of the argument),
the Court nevertheless addresses the issue.   See Villarreal v.
Smith, 201 F. App'x 192, 194 (5th Cir. 2006) ("A federal court
has the affirmative duty to inquire into jurisdiction whenever
the possibility of a lack of jurisdiction arises.").

In Freeport-McMoRan, Inc. v. KN Energy, Inc., the U.S.
Supreme Court addressed the substitution of a nondiverse
plaintiff under Rule 25(c) of the Federal Rules of Civil
Procedure, and held that "if jurisdiction exists at the time any
action is commenced, such jurisdiction may not be divested by
subsequent events." 498 U.S. at 428.   Although this sweeping
language is arguably applicable here, the Fifth Circuit, and
numerous other courts, have rejected a broad interpretation of
Freeport-McMoRan and have limited its application to cases
involving the addition of parties under Rule 25.   See Cobb v.
Delta Exports, Inc., 186 F.3d 675, 680 (5th Cir. 1999)
(explaining that Freeport-McMoRan is limited to the context of an
additional party substituted pursuant to Rule 25); Ingram v. CSX
Transp., Inc., 146 F.3d 858, 861 (11th Cir. 1998) ("Freeport-

McMoRan does not stand for the proposition that all additions of

nondiverse parties are permissible as long as complete diversity

existed at the time of the commencement of the lawsuit."); see

also In re Olympic Mills, 477 F.3d at 7; Am. Fiber & Finishing,

Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136, 141-42 (1st Cir.

2004).  The case literature supports a finding that a nondiverse

intervenor, having intervened as of right, will defeat

jurisdiction if considered indispensable.  See, e.g., In re

Olympic Mills, 477 F.3d at 7 ("If [the intervenor] is entitled to

intervene as a matter of right under Rule 24(a)(2) and is an

indispensable party under Rule 19(b), the litigation must be

dismissed because there would not be complete diversity."

(quoting B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440

F.3d 541, 544 (1st Cir. 2006))); Lawyers Title, 2009 WL 2032406,

at *6 ("Since the Court is of the opinion that Intervenors are

qualified to intervene as of right under Rule 24, and because

their presence would destroy complete diversity, the Court must

next determine whether Intervenors are indispensable to this

action . . . ."); see also Brown, 462 F.3d at 393 ("If a person

cannot be made a party under Rule 19(a) because . . . joinder

would destroy subject-matter jurisdiction, then a federal court

must determine whether that person is "indispensable.").

Therefore, to answer the question of whether the Court has

diversity jurisdiction, the Court must first address whether LSU

intervened as of right, and then whether LSU is an indispensable party.

*(1)  Intervention*

The magistrate judge granted LSU's motion to intervene; however, it is unclear whether LSU was allowed to intervene under Rule 24(a)(2) or (b)(1)(B).  The Court finds that LSU intervened as of right under Rule 24(a)(2).

The Fifth Circuit has developed a four-prong test for determining whether intervention should be as of right:  (1) the application must be timely; (2) the applicant must have an interest relating to the subject matter of the litigation; (3) the applicant must be so situated that the outcome of the case may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the interest must be one not adequately represented by the existing parties.[10]  See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 690 F.2d 1203, 1208 (5th Cir. 1982).  All four factors are patently present in this case.

First, LSU's motion to intervene was timely, having been

---

[10] Rule 24(a) provides:
On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
Fed. R. Civ. P. 24(a)(2).

filed nine days after Dixie filed suit in this Court.  Second,

LSU has an interest relating to the subject matter of the

litigation—an understatement to say the least.  The Fifth Circuit

has defined "interest" as one that is "direct, substantial, [and]

legally protectable."  Saldano v. Roach, 363 F.3d 545, 551 (5th

Cir. 2004) (alteration in original) (quoting John Doe 1 v.

Glickman, 256 F.3d 371, 379 (5th Cir. 2001)).  The thrust of

Dixie's argument challenges the actions of LSU, not the VA.

Specifically, Dixie alleges that "[t]o this date, Dixie has not

received an offer to buy back their property.  Instead, LSU has,

without proper title or a final judgment designating that its

taking of the property passed constitutional muster, LSU has

'sold' the property to the VA."  Dixie emphasizes that "LSU

transferred the Dixie Parcel, in knowing and willful violation of

Dixie's rights, and LSU's obligations, under the Louisiana

Constitution."  Put simply, Dixie argues that "what LSU is

attempting to do is an abuse of the government's authority to

expropriate."  Considering that Dixie is alleging that LSU

unconstitutionally expropriated the land, illegally sold the

property to the VA, and wrongfully refused to offer the parcel

back to Dixie, the Court finds that LSU has a direct and

substantial interest in the subject matter that forms the basis

of this suit.  Third, the Court finds that LSU is so situated

that the outcome of the case may, as a practical matter, impair

LSU's ability to protect its interest.  Setting aside the Court's federalism concerns and assuming the Court reached the merits of this case, it is axiomatic that any examination of LSU's expropriation power would impair LSU's interest.  Cf. Sierra Club v. Espy, 18 F.3d 1202, 1207 ("[A]n intervenor's interest is impaired by the stare decisis effect of the district court's judgment." (internal quotation marks omitted)).  Finally, the Court finds that LSU's interest is not adequately represented by the existing parties.  Although the VA and LSU's interests are aligned in terms of building a new medical complex, LSU has independent interests apart from the VA as the only party who expropriated and transferred the land, which are the main actions being challenged.  Glickman, 256 F.3d at 380 (noting that the burden of proving inadequate representation is "minimal"); Sierra Club v. Espy, 18 F.3d 1202, 1208 (5th Cir. 1994) ("The [intervenor] need only show that representation 'may be' inadequate.").

*(2) Indispensability*

Having concluded that LSU is an intervenor as of right, and because LSU's presence would destroy complete diversity, the Court must determine whether LSU is an indispensable party under Rule 19(b).  The factors the Court must consider include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2)  the extent to which any prejudice could be lessened
or avoided by:

      (A) protective provisions in the judgment;

      (B) shaping the relief;

      (C) other measures;

(3) whether a judgment rendered in the person's absence
would be adequate; and

(4) whether the plaintiff would have an adequate remedy
if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).   The Court is mindful that a Rule 19(b)

inquiry is a "highly-practical, fact-based endeavor."  Hood ex

rel. Miss. v. City of Memphis, Tenn., 570 F.3d 625, 628 (5th Cir.

2009);  AT&T Commmc'n v. Bellsouth Telecomm. Inc., 238 F.3d 636,

658 (5th Cir. 2001) ("The determination of whether a party is

'indispensable' is thus a pragmatic one.").

*(a)  Any Prejudice to Intervenor or Existing Parties*

As previously mentioned, the Court notes that any judgment

rendered in LSU's absence would prejudice LSU, especially if the

Court were to address the merits of the action.  An examination

of the state's expropriation power, without input from LSU, would

be prejudicial.  Therefore this factor weighs in favor of finding

LSU as indispensable.

*(b)  Lessening or Avoidance of Prejudice*

As to the extent to which any prejudice could be lessened or

avoided, no alternative remedies or forms of relief have been

proposed to the Court or appear to be available.  See Lawyers

Title, 2009 WL 2032406, at *7.  The Court finds this factor

weighs in favor of indispensability.

*(c)  Adequacy of Judgment in Intervenor's Absence*

In the Rule 19(b) context, "adequacy refers to the public

stake in settling disputes by wholes, whenever possible."

Republic of Phillipines v. Pimentel, 553 U.S. 851, 870 (2008).

The third Rule 19(b) factor focuses on the "social interest in

the efficient administration of justice and the avoidance of

multiple litigation."  Id. (quoting Ill. Brick Co. v. Illinois,

431 U.S. 720, 738 (1977)).  The Court finds that going forward

with this action without LSU would not further the public

interest in settling this dispute as a whole, especially in light

of the fact that LSU is a party to all ongoing state-court

litigation.  This factor weighs heavily toward indispensability.

*(d)  Adequacy of Dixie's Remedy if Action Dismissed*

The Court finds that Dixie would not be severely prejudiced

by dismissal of this action.  Specifically, the Court notes that

the case is in its early stage (at least at the federal level)

and no hearings have been held.  All discovery would have been

previously conducted for purposes of the state court litigation.

State court provides Dixie with an adequate, although perhaps not

strategically preferred, remedy.  See Scoggins v. Frederick, 629

F.2d 426, 427 (5th Cir. 1980) (explaining that the final factor

under Rule 19(b) is to consider whether there is an adequate

forum to determine the interests of all parties if the suit is dismissed).

Under these circumstances in which LSU is a nondiverse intervenor as of right, and where common sense and the law compel a finding of indispensability, the Court lacks diversity jurisdiction and dismissal is required.  See, e.g., Lawyers Title, 2009 WL 2032406, at *7 (finding that the postfiling, nondiverse, intervenor defendant divests the court of subject-matter jurisdiction and that the case must be dismissed); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); In re Olympic Mills, 447 F.3d at 7 ("If [intervenor] is entitled to intervene as a matter of right under Rule 24(a)(2) and is an indispensable party under Rule 19(b), the litigation must be dismissed because there would not be complete diversity." (quoting Kellogg, 443 F.3d at 544)); Brown, 462 F.3d at 393 ("If a person who qualifies under Rule 19(a) cannot be made a party because, for example, joinder would destroy subject-matter jurisdiction, a federal court must determine whether that person is "indispensable.").

Accordingly, IT IS HEREBY ORDERED that Dixie Brewing's motion for a preliminary and permanent injunction is DENIED and the case is DISMISSED for lack of subject-matter jurisdiction. IT IS FURTHER ORDERED that the Veterans Affairs' motion to quash

19

subpoenas is DENIED AS MOOT; LSU's motion to quash subpoenas and, alternatively, for a protective order is DENIED AS MOOT; and Eskew Dumas Ripple PC's motion to quash subpoenas is DENIED AS MOOT.

New Orleans, Louisiana, June 10, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE